UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ROBERT SMITH**                                                                   **CIVIL ACTION**
**(DOC# 109628)**

**VERSUS**

**BURL CAIN, ET AL**                                                  **NO. 08-655-D-M2**

## **NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, June 8, 2009.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT SMITH (DOC# 109628)** | **CIVIL ACTION** |
| **VERSUS** | |
| **BURL CAIN, ET AL** | **NO. 08-655-D-M2** |

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Petition for Writ of Habeas Corpus (R. Doc. 1) filed by petitioner, Robert Smith ("Smith"). The State has filed an opposition (R. Doc. 7) to Smith's petition.

## PROCEDURAL BACKGROUND

Smith was charged by bill of information with possession with intent to distribute marijuana in violation of La. R.S. 40:966(A) in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana. He waived formal arraignment and entered a plea of not guilty. Following a jury trial on August 23-25, 1999, he was found guilty as charged. The State subsequently filed a habitual offender bill of information on September 3, 1999. On October 26, 1999, Smith waived his right to a habitual offender hearing, and the trial court found such waiver to be knowing, intentional and voluntary. After stipulating to his status as a third felony habitual offender, Smith was sentenced to life in prison at hard labor without the benefit of parole, probation, or suspension of sentence. He filed a motion to reconsider sentence in the state trial court, which was denied.

Smith then appealed his conviction and sentence to the First Circuit Court of Appeals. The only issue in his appeal that was briefed by counsel was a claim that his habitual offender sentence was unconstitutionally excessive. Smith also raised several *pro*

1

*se* claims in his appeal: (1) insufficient evidence to establish his status as a third felony offender; (2) the trial court erred when it allowed the State to introduce a fingerprint card without first complying with the certification requirements of La. R.S. 15:585; (3) His adjudication and sentence as a habitual offender was improper; (4) the trial court erred in relying on the minutes of his prior guilty plea rather than transcripts of those proceedings; and (5) ineffective assistance of counsel during his habitual offender proceedings. The First Circuit affirmed both his conviction and habitual offender adjudication on November 3, 2000. Smith applied for writs to the Louisiana Supreme Court, which application was denied on November 16, 2001.

On June 28, 2002, Smith filed an application for post-conviction relief with the state trial court, wherein he asserted six (6) claims. On January 14, 2005, a Commissioner for the 19th Judicial District Court recommended dismissal of all of Smith's claims, except for Claim Nos. 4 and 5. Subsequently, after further briefing by the parties, the Commissioner recommended the dismissal of Claim Nos. 4 and 5 on the merits on February 28, 2005. On March 15, 2005, the trial court adopted the Commissioner's recommendation and dismissed Smith's post-conviction relief application in its entirety. Smith did not seek writs from the First Circuit or the Louisiana Supreme Court relative to the trial court's denial of his post-conviction relief application.

On October 13, 2008, Smith filed his present habeas petition with this Court, wherein he asserts the same claims that he raised in his post-conviction relief application. The State opposes Smith's habeas petition and contends that it should be dismissed with prejudice as untimely and procedurally defaulted.

## **LAW & ANALYSIS**

The time period during which a habeas corpus petitioner must file an application for relief is set forth in 28 U.S.C. § 2244(d)(1) and (2), which provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §2244(d)(1) and (2). To be considered "properly filed" for purposes of §2244, an application's delivery and acceptance must be in compliance with the applicable laws and rules governing filings. *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S.Ct. 1807, 1811, 161 L.Ed.2d 669 (2005), citing *Artuz v. Bennett*, 531 U.S. at 8, 11, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000).

Smith's conviction and sentence became final by the conclusion of direct review, or the expiration of the time for seeking such review, on February 14, 2002, ninety (90) days after the Louisiana Supreme Court denied his writ application on direct review because Smith did not apply for a writ of certiorari to the U.S. Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999)(A state conviction becomes final upon direct review when the U.S. Supreme Court denies an application for a writ of certiorari or the period for seeking certiorari expires). One hundred and thirty-four (134) days of untolled time then elapsed between February 14, 2002 and the date that Smith filed his post-conviction relief application in the state trial court, June 28, 2002. The one-year limitations period was then tolled while that application was pending before the state trial court. Because Smith did not apply for writs to the First Circuit Court of Appeals or the Louisiana Supreme Court concerning the state trial court's denial of his post-conviction relief application, the limitations period commenced to run again on April 14, 2005, thirty (30) days after the trial court denied that application, and ran for another three (3) years and six (6) months until Smith filed his present habeas petition on October 13, 2008. Thus, it appears that well over one (1) year of untolled time elapsed between the finality of Smith's conviction and sentence and the filing of his present habeas application, rendering such application untimely.

Smith, however, contends that his habeas petition is not untimely because he is entitled to equitable tolling of the one (1) year limitations period since he never received a copy of the trial court's order denying his post-conviction relief application. The Fifth Circuit Court of Appeals has held that the one (1) year limitations period set forth in 28 U.S.C. §2244(d) (*i.e.*, the AEDPA limitations period) is subject to equitable tolling in "rare and

exceptional circumstances." *United States v. Patterson*, 211 F.3d 927, 928 (5th Cir. 2000). The doctrine "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999)(internal quotation marks omitted). "'Excusable neglect' does not support equitable tolling." *Ott v. Johnson*, 192 F.3d 510, 513-14 (5th Cir. 1999). The Fifth Circuit has established that the statute of limitations should be tolled if a petitioner, "exercising due diligence, could not timely uncover essential information that was [a] predicate to his claim." *Coker v. Quarterman*, 2008 WL 724042, **2 (5th Cir. 2008), quoting *Pacheco v. Rice*, 966 F.2d 904, 906-07 (5th Cir. 1992). Although the Fifth Circuit has not found any cases discussing who bears the burden of proof concerning equitable tolling in the AEDPA context, the court "believe[s] the [petitioner] should bear [that] burden." *Id.*, quoting *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.), *modified on reh'g*, 223 F.3d 797 (5th Cir. 2000).

Additionally, long delays in receiving notice of a state court action may warrant equitable tolling. *Id.*, citing *Phillips*, at 511 ("[W]e conclude that the [four-month] delay in receiving notification . . . could qualify for equitable tolling"); *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999)(finding that a delay in receiving information for "months and months" may qualify for equitable tolling). Thus, a habeas petitioner seeking equitable tolling of the limitations period based upon a delay in receiving notice of a state court action must establish: (1) a "substantial" delay in receiving notice of a state court action; and (2) that the petitioner "pursued the [habeas corpus relief] process with diligence and alacrity" after receiving that notification. *Phillips*, at 511.

As discussed above, Smith filed his post-conviction relief application with the state

5

trial court on June 28, 2002.  When the trial court had not issued a ruling relative to that application in 2004, Smith filed a request with the First Circuit Court of Appeals, seeking a writ of mandamus directing the trial court to rule upon his application.  The First Circuit granted Smith's request on January 24, 2005, and ordered the trial court to act on Smith's post-conviction relief application on or before March 15, 2005.  The trial court subsequently dismissed Smith's post-conviction relief application in its entirety on March 15, 2005.  Smith did not seek writs concerning the denial of that application purportedly because he did not receive a copy of it.  The Court has no way of definitively determining whether or not Smith actually failed to receive a copy of the trial court's judgment.  The state trial court's March 15, 2005 ruling indicates that a copy of the denial of Smith's post-conviction relief application was forwarded to him, but no prison mail records for the time period in question have been submitted to the Court.  Such records would possibly indicate whether or not the prison mail room received mail from the 19th Judicial District Court for Smith during the time in question, but those records probably would not disclose with certainty whether that mail was, in fact, the trial court's ruling on Smith's post-conviction relief application and, if so, whether Smith actually received the ruling from the mail room.  Regardless, the Court finds that Smith received *notice* that the state trial court had taken action on his post-conviction relief application on at least two (2) occasions.

First, Smith received notice via the First Circuit's September 13, 2005 ruling on his July 6, 2005 request for a writ of mandamus directing the trial court to rule on his post-conviction relief application.  In that ruling, the First Circuit denied Smith's writ request on the ground that it was moot because "[t]he district court ha[d] filed with th[e First Circuit] a copy of its action of March 15, 2005 on relator's application for post conviction relief."  *See*,

6

R. Doc. 1-3, p. 142. Thus, it was apparent from the First Circuit's writ denial that the trial court had taken action on Smith's post-conviction relief application. It is also apparent from two (2) letters that Smith purportedly submitted to the Clerk of Court for the 19th Judicial District Court on November 6, 2005 and May 9, 2006, that Smith was aware that an action had been taken by the state trial court on his post-conviction relief application since he requested a "duplicate of the written actions taken by the court." *See*, R. Doc. 1-3, p. 158, 160.

      The second occasion upon which Smith received notice that the state trial court had taken action on his post-conviction relief application and that it had, in fact, denied such application was through the First Circuit's August 21, 2006 ruling denying his May 12, 2006 request for a writ of mandamus. In that ruling, the First Circuit specifically stated that Smith should seek a copy of the trial court's ruling on his post-conviction relief application directly from the trial court. The First Circuit also indicated, in its ruling, that Smith had asserted a claim that his post-conviction relief application "was dismissed without an evidentiary hearing;" however, the First Circuit could not evaluate that claim because Smith failed to submit the necessary documentation to substantiate that claim (*i.e.*, a copy of his application for post-conviction relief, the State's answer, the Commissioner's report, the trial court's ruling, and any other pertinent documents). Thus, at the least, it appears that Smith had knowledge of the trial court's denial of his post-conviction relief application as of August 21, 2006 (approximately one (1) year and five (5) months after such denial was issued), and that, if he wished to obtain a copy of that denial, he had to request it directly from the

trial court.[1]

The Court finds that, even if Smith received notice of the trial court's action on his post-conviction relief application as early as the First Circuit's September 13, 2005 writ denial, such notice came approximately six (6) months after the trial court had taken that action on March 15, 2005. Since the Fifth Circuit has concluded that a four (4) month delay in receiving notification of a state court action can qualify for equitable tolling,[2] it is likely that the six (6) month delay in Smith's receiving notice of the trial court's action on his post-conviction relief application in the present case could constitute a "substantial delay;" however, as mentioned above, in order for the doctrine of equitable tolling to apply herein, the Court must also find that, upon receiving notification of the state court's action, Smith pursued the habeas corpus relief process with "diligence and alacrity," which the Court is not convinced occurred in this case.

As discussed above, upon receiving notice that the state trial court had taken action on his post-conviction relief application, instead of filing a motion with the state trial court requesting it to produce a copy of its action/decision, Smith purportedly sent a letter to the

---

[1] Although Smith has indicated that he did not receive a copy of the trial court's March 15, 2005 judgment adopting the Commissioner's recommendations and dismissing his post-conviction relief application, he has never indicated that he failed to receive a copy of the Commissioner's January 14, 2005 and February 28, 2005 reports, recommending the dismissal of his post-conviction relief claims. Those are the documents that contain a substantive analysis of why his claims were dismissed, which he could have used, in conjunction with notice that his claims had been dismissed by the trial court, to file a writ application with the First Circuit and the Louisiana Supreme Court concerning the denial of his post-conviction claims.

[2] *See, Phillips v. Donnelly*, 216 F.3d 508 (5th Cir.), *modified on reh'g*, 223 F.3d 797 (5th Cir. 2000); *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999)(finding that a delay in receiving information for "months and months" may qualify for equitable tolling).

clerk of court for the state trial court a few weeks after he received that notice and requested a copy of the trial court's action.[3] Although he did not receive a response from the clerk of court, Smith sent another similar letter to the clerk of court approximately six (6) months later, again requesting a copy of the state court's action. Smith has not indicated that he ever contacted the state trial court to find out the appropriate means for obtaining a copy of the trial court's ruling, nor does he indicate that he ever sent the appropriate fee to obtain a copy of such ruling from the clerk of court.[4] Rather than doing so and despite his knowledge that the state trial court had already taken action on his post-conviction relief application on March 15, 2005, he filed yet another request with the First Circuit Court of Appeals on May 12, 2006, seeking to have it direct the trial court to issue

---

[3] The Court utilizes the term "purportedly" when referring to the letters directed to the clerk of court because neither of those letters are contained in the certified record of the 19th Judicial District Court.

[4] The Louisiana Supreme Court has held that lower state courts are required to provide indigent inmates with copies of only certain types of documents as of right. *State ex rel. Simmons v. State*, 647 So.2d 1094 (La. 1994). Those documents include transcripts of guilty plea colloquies, copies of bills of information or grand jury indictments charging them with committing a crime, copies of district court minutes for various portions of their trials, copies of transcripts of evidentiary hearings held on application for post-conviction relief, and copies of documents committing them to custody. *Id.* For all other documents, which would include a copy of a trial court's ruling on a post-conviction relief application, an indigent inmate has a constitutional right to free copies only in those instances where he demonstrates that denial of the request would deprive him of an "adequate opportunity to present [his] claims fairly." *State ex rel. Bernard v. Criminal Dist. Court Section J*, 94-2247 (La. 1995), 653 So.2d 1174, quoting *United States v. MacCollom*, 417 U.S. 600, 616, 94 S.Ct. 2437, 2447, 41 L.Ed.2d 341 (1974). Meeting that constitutional threshold requires a showing of a "particularized need." *Id.* Since Smith never filed a motion for production of the trial court's ruling on his post-conviction relief application and demonstrated a "particularized need" for that document, he did not follow the proper procedural mechanism for obtaining a copy of the trial court's ruling, and neither the trial court nor the clerk of court's office was required to produce a copy of such ruling to him free of charge.

clerk of court for the state trial court a few weeks after he received that notice and requested a copy of the trial court's action.[3] Although he did not receive a response from the clerk of court, Smith sent another similar letter to the clerk of court approximately six (6) months later, again requesting a copy of the state court's action. Smith has not indicated that he ever contacted the state trial court to find out the appropriate means for obtaining a copy of the trial court's ruling, nor does he indicate that he ever sent the appropriate fee to obtain a copy of such ruling from the clerk of court.[4] Rather than doing so and despite his knowledge that the state trial court had already taken action on his post-conviction relief application on March 15, 2005, he filed yet another request with the First Circuit Court of Appeals on May 12, 2006, seeking to have it direct the trial court to issue

---

[3] The Court utilizes the term "purportedly" when referring to the letters directed to the clerk of court because neither of those letters are contained in the certified record of the 19th Judicial District Court.

[4] The Louisiana Supreme Court has held that lower state courts are required to provide indigent inmates with copies of only certain types of documents as of right. *State ex rel. Simmons v. State*, 647 So.2d 1094 (La. 1994). Those documents include transcripts of guilty plea colloquies, copies of bills of information or grand jury indictments charging them with committing a crime, copies of district court minutes for various portions of their trials, copies of transcripts of evidentiary hearings held on application for post-conviction relief, and copies of documents committing them to custody. *Id.* For all other documents, which would include a copy of a trial court's ruling on a post-conviction relief application, an indigent inmate has a constitutional right to free copies only in those instances where he demonstrates that denial of the request would deprive him of an "adequate opportunity to present [his] claims fairly." *State ex rel. Bernard v. Criminal Dist. Court Section J*, 94-2247 (La. 1995), 653 So.2d 1174, quoting *United States v. MacCollom*, 417 U.S. 600, 616, 94 S.Ct. 2437, 2447, 41 L.Ed.2d 341 (1974). Meeting that constitutional threshold requires a showing of a "particularized need." *Id.* Since Smith never filed a motion for production of the trial court's ruling on his post-conviction relief application and demonstrated a "particularized need" for that document, he did not follow the proper procedural mechanism for obtaining a copy of the trial court's ruling, and neither the trial court nor the clerk of court's office was required to produce a copy of such ruling to him free of charge.

a ruling on his post-conviction relief application.[5]  As noted above, in the First Circuit's denial of his May 12, 2006 writ application, the First Circuit specifically advised Smith to obtain a copy of the trial court's ruling from the trial court.  There is no evidence in the record that Smith attempted to do so after the First Circuit ruled on that writ application. Instead, it appears that he sought writs to the Louisiana Supreme Court concerning the First Circuit's denial of his writ of mandamus request, which were denied, and that, nearly two (2) years later, on March 27, 2008, he filed yet another request for a writ of mandamus with the First Circuit, again seeking to have the First Circuit direct the trial court to issue a ruling on a post-conviction relief application that he was aware the trial court had already taken action upon on March 15, 2005.  Thus, despite receiving knowledge as early as 2005 or 2006 that he needed to obtain a copy of the trial court's ruling on his post-conviction relief application directly from the trial court, Smith never took the appropriate actions to do so; he failed to timely apply for writs to the First Circuit and the Louisiana Supreme Court concerning the trial court's denial of his post-conviction relief application; and he waited two (2) to three (3) years before filing his present habeas petition concerning the claims asserted in his post-conviction relief application.[6] [7]  The Fifth Circuit has held that difficulty

---

[5] It should be noted that Smith's requests for writs of mandamus do not constitute "other collateral review" that would toll the limitations period under AEDPA.  *Moore v. Cain*, 298 F.3d 361 (5th Cir. 2002)(State prisoner's application to the Louisiana Supreme Court for a writ of mandamus, which requested that the trial court be directed to rule upon the prisoner's state habeas petition, was not an "application for collateral review" with respect to the prisoner's conviction, and the mandamus application therefore did not toll the statute of limitations on the prisoner's federal habeas petition under AEDPA).

[6] The Court agrees with the State that, even assuming the two letters that Smith purportedly sent to the 19th Judicial District Court Clerk of Court in November 2005 and May 2006 constitute diligent efforts on his part to pursue his habeas proceedings, thereby tolling the AEDPA limitations period, such diligent efforts ceased after he

in obtaining records from a state court and a lack of money to pay for copies are common problems among inmates who are trying to pursue post-conviction relief and do not present exceptional circumstances warranting equitable tolling of the one (1) year AEDPA limitations period.  See, Felder v. Johnson, 204 F.3d 168, 171-172 (5th Cir. 2000); Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998).[8]  Accordingly, Smith's failure to pursue the correct avenues for obtaining a copy of the trial court's ruling on his post-conviction relief application and his waiting two (2) to three (3) years after he was aware that such a ruling had been issued by the trial court to file his present habeas petition preclude application of the doctrine of equitable tolling in this case.  Smith's habeas petition should therefore be dismissed with prejudice as untimely-filed.[9]

---

received notice yet again from the First Circuit on August 21, 2006 that he needed to obtain a copy of the trial court's denial of his post-conviction relief application directly from the trial court, and Smith never made any effort to do so after August 21, 2006. Thus, even with the benefit of some equitable tolling, over two (2) years of untolled time ran between the date the First Circuit told Smith to obtain a copy of the trial court's denial directly from the trial court, on August 21, 2006, and the date he filed his habeas petition, October 13, 2008, without Smith making any efforts in the trial court to obtain a copy of its decision, thereby rendering his habeas petition untimely.

[7] Compare, Miller v. Collins, 305 F.3d 491 (6th Cir. 2002)(applying equitable tolling where a petitioner claimed he never received a copy of a state court decision and therefore did not know that it was time for him to proceed to the next stage in his proceedings.  The record supported the petitioner's claim that he lacked knowledge of the state court's action, as he had filed a motion in state court asking it to proceed to judgment.  Once the state court informed him that it had already ruled, the petitioner filed at the next stage within three (3) weeks).

[8] See also, Cofer v. Johnson, 226 F.3d 643 (5th Cir. 2000); Roughley v. Cockrell, 2002 WL 1899622 (5th Cir. 2002); Kiser v. Dretke, 2004 WL 2331592 (N.D.Tex. 2004).

[9] Because the Court finds that Smith's habeas petition should be dismissed with prejudice as untimely-filed, the State's other arguments concerning Smith's alleged failure to exhaust his state court remedies and the procedural bars to his claims need not be addressed herein.

## **RECOMMENDATION**

For the above reasons, it is recommended that the Petition for Writ of Habeas Corpus (R. Doc. 1) filed by petitioner, Robert Smith, should be **DISMISSED WITH PREJUDICE**.

Signed in chambers in Baton Rouge, Louisiana, June 8, 2009.

**MAGISTRATE JUDGE CHRISTINE NOLAND**